# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

## ATLANTA DIVISION

| | |
|---|---|
| *In re MiMedx Group, Inc. Securities Litigation* | **Civil Action No 1:13-cv-03074-TWT**<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   OVERVIEW OF THE LITIGATION .............................................................. 3

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 6

IV.  THE PROPOSED SETTLEMENT HAS NO OBVIOUS DEFICIENCIES AND IS THE RESULT OF GOOD FAITH, ARM'S-LENGTH NEGOTIATIONS BY WELL-INFORMED AND EXPERIENCED COUNSEL .......................................................... 10

V.   THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL.... 12

VI.  THE BENEFITS FOR THE CLASS WEIGHED AGAINST LITIGATION RISKS, STRONGLY SUPPORT PRELIMINARY APPROVAL .................................................. 13

VII.  THE PROPOSED NOTICE IS ADEQUATE ................................................ 15

VIII.  PROPOSED SCHEDULE ............................................................................. 17

IX.  THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ............... 19

X.   CONCLUSION.............................................................................................. 20

i

# TABLE OF AUTHORITIES

**Cases**

*Access Now Inc. v. Claire's Boutiques*
No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7. 2002)..................................... 7, 8, 9

*Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*
630 F.2d 1164 (7th Cir. 1980) ............................................................................................ 8

*Amchem Prods. v. Windsor*
521 U.S. 591 (1997) ......................................................................................................... 20

*Ass'n for Disabled Ams.,Inc., v. Amoco Oil Co.*
211 F.R.D. 457 (S.D. Fla. 2002) ........................................................................................ 8

*Badger v. S. Farm Bureau Life Ins. Co.*,
612 F.3d 1334 (11th Cir. 2010).......................................................................................... 14

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984).............................................................................................. 7

*Borcea v. Carnival Corp.*
238 F.R.D. 664 (S.D. Fla. 2006) ........................................................................................ 20

*Canupp v. Liberty Behavioral Health Corp.*,
417 F. App'x. 843 (11th Cir. 2011)..................................................................................... 10

*Chatelain v. Prudential- Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ...................................................................................... 13

*Cotton v. Hinton*
559 F.2d 1326  (5th Cir. 1997).......................................................................................... 7,8,9

*Fresco v. Auto Data Direct, Inc.*,
2007 WL 2330895 (S.D. Fla. May 14, 2007) ...................................................................... 9

*Gutter v. E.I. Dupont De Nemours & Co.*,
1:95-cv-02152-ASG, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003)...................... 13

*In re Charter Commc'ns, Inc. Sec. Litig.*,
2005 WL 4045741 (E.D. Mo. June 30, 2005)....................................................................... 13

*In re Checking Account Overdraft Litig.*,
2012 WL 4173458 (S.D. Fla. Sept. 19, 2012)..................................................................... 9, 17

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981).............................................................................................. 11

*In re Domestic Air Trans.*
148 F.R.D. (N.D. Ga. 1993)................................................................................................ 10

*In re Domestic Air Transp. Antitrust Litig.*
148 F.R.D. 297 (N.D. Ga. 1993)...................................................................................... 8, 17

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005) ................................................................................ 11

*In re Marsh ERISA Litig.*
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................... 17

*In re Motorsports Merch. Antitrust Litig.*
  112 F. Supp. 2d 1329 (N.D. Ga. 2000) ..................................................... 10

*In re Skinner Grp., Inc.,*
  206 B.R. 252 (Bankr. N.D. Ga. 1997) ......................................................... 7

*Melanie K. v. Horton*
  No. 1:14-CV-710-WSD, 2015 WL 1799808 (N.D. Ga. Apr. 15, 2015) ................... 7

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) .................................................................................. 15

*Rhein Med., Inc. v. Koehler*
  889 F. Supp. 1511 (M.D. Fla. 1995) ............................................................ 8

*Robbins v. Koger Props. Inc.,*
  116 F.3d 1441 (11th Cir. 1997) ................................................................. 14

*Soberal-Perez v. Heckler,*
  717 F.2d 36 (2d Cir. 1983) ....................................................................... 15

*Strube v. Am. Equity Inv. Life Ins. Co.,*
  226 F.R.D. 688 (M.D. Fla. 2005) ............................................................... 12

**Other Authorities**

2 Herbert Newberg & Alba Conte
  Newberg on Class Actions (3d ed. 1992) .......................................... 10, 11

Manual For Complex Litigation (Fourth) ............................................... 10

**Rules**

15 U.S.C. § 78u-4(a)(7) ............................................................................ 16

Fed. R. Civ. P. 23 ............................................................................ passim

Court-appointed Lead Plaintiff Tim Kelly ("Lead Plaintiff") and Named Plaintiffs Alexina Brandford and Mark Canterna ("Named Plaintiffs") (collectively with the Lead Plaintiff, "Plaintiffs"), on behalf of themselves and the putative Settlement Class (as defined below) have reached a proposed settlement of this securities class action lawsuit (the "Litigation") for a total of $2,979,000 in cash that, if approved, will resolve all claims in the Litigation.[1]  Plaintiffs respectfully move the Court for an order preliminarily approving the Settlement, approving the form and manner of providing notice of the Settlement to the Settlement Class, certifying the Settlement Class, and setting a hearing date for final approval of the Settlement, approval of the proposed Plan of Allocation, and Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and awards to Lead and Named Plaintiffs. Defendants consent to the entry of the accompanying Proposed Preliminary Approval Order, which is attached as Exhibit A to the Stipulation.[2]

## I.   INTRODUCTION

---

[1] All capitalized terms used herein that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated as of November 17, 2015 (the "Stipulation"), which is being filed concurrently herewith.

[2] Because Defendants consent to the relief requested in this motion, unless the Court requests further briefing, the motion is not fully submitted for the Court's review.

1

The Proposed Settlement is an excellent result for the Class. The Proposed Settlement was reached after over two of aggressive litigation, which occurred only after Plaintiffs' Motion for Class Certification was fully briefed, and included: a comprehensive investigation which resulted in the filing of the operative Amended Complaint; full briefing and the Court's decision on Defendants' Motion to Dismiss; full briefing and the Court's decision on Defendants' Motion to Reconsider the Court's Order denying Defendants' Motion to Dismiss; extensive discovery including the production of thousands of pages of documents by Defendants; consultation with damages experts; the depositions of the Named Plaintiffs in connection with Plaintiffs' class certification motion; the depositions of both Plaintiffs' and Defendants' experts on market efficiency submitted in connection with class certification; and full briefing on a *Daubert* motion filed by Defendants seeking to exclude Plaintiffs' market efficiency expert. The Litigation was at all times hard fought by both sides.

The Proposed Settlement was the result of extensive arm's-length negotiations conducted by experienced counsel and represents a substantial recovery of the Class' estimated damages. Plaintiffs submit that, while the merits of the case are strong, in light of Defendant's potential defenses, the maximum amount of potentially recoverable damages, the risks of prosecuting this litigation through trial, and the very significant recovery achieved, the Proposed Settlement is not only well within the range of reasonableness, it is an excellent result and is in

2

the best interests of the Class.   The Proposed Settlement warrants preliminary approval by this Court so that a Settlement Hearing can be scheduled to consider final approval of the Proposed Settlement, and notice of the Proposed Settlement and hearing can be distributed to members of the Settlement Class.

## II.   OVERVIEW OF THE LITIGATION

This action was filed as a class action on behalf of all purchasers of MiMedx Securities between March 29, 2012 and September 4, 2013, inclusive (the "Class Period").  By Order dated December 10, 2013, Tim Kelly was appointed to serve as Lead Plaintiff and the Rosen Law Firm, P.A. was approved as Lead Counsel. (Dkt. No. 34).

On January 27, 2014, Lead Plaintiff filed the Consolidated Amended Class Action Complaint in the Litigation which alleges violations of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") against Defendants, and violations of Section 20(a) of the Exchange Act against Petit, Senken and Taylor (Dkt. No. 37).   On February 27, 2014, the Defendants filed a motion to dismiss the Consolidated Amended Complaint, which was fully briefed.   (Dkt. Nos. 41, 43, 44).  By Order dated August 13, 2014, the Court denied Defendants' Motion to Dismiss.  Thereafter, Defendants filed a Motion for Reconsideration of the Court's Order denying the Motion to dismiss, which was also fully briefed (Dkt. Nos., 50, 53, 54).  The Parties then stipulated to a proposed schedule which

provided for deadlines at various increments after the Court's ruling on the Motion for Reconsideration.   The Court entered the Scheduling Order on October 14, 2014.   (Dkt. No. 56).   By Order dated December 2, 2014 the Court denied Defendants' Motion for Reconsideration.   (Dkt. No. 59).   Pursuant to the Scheduling Order, the Parties engaged in discovery, with both Parties serving and responding to Document Requests and Interrogatories.   Subsequent to obtaining permission from the Court, Plaintiffs filed a Second Amended Complaint adding an additional class representative. On March 16, 2015 Plaintiffs filed their Motion for Class Certification.   Again subsequent to obtaining the Court's permission, Plaintiffs filed a Third Amended Complaint substituting Named Plaintiffs Alexina Brandford and Mark Canterna in the place of Named Plaintiff Arnold Entz as proposed class representatives. Defendants took the depositions of the Named Plaintiffs, as well as Plaintiffs' expert Dr. Paul Seguin, in connection with class certification. In opposing Plaintiffs' Motion for Class Certification, Defendants filed a Motion to Exclude the Expert Report and Testimony of Paul Seguin and submitted the Rebuttal Expert Report of Paul Gompers, whom Plaintiffs' Counsel deposed. The Class Certification Motion and Defendants' Motion to Exclude the Report and Testimony of Paul Seguin was fully briefed as of August 6, 2015.

On September 18, 2015, Plaintiffs' Counsel and respective counsel for Defendants met in New York to engage in a full-day mediation session before professional mediator Jed Melnick, Esq.   Prior to the mediation, both Parties

4

submitted confidential mediation briefs.  Following the mediation, Mr. Melnick sent counsel for Plaintiffs and Defendants a mediator's proposal outlining the principal terms of the proposed settlement.  Both Plaintiffs and Defendants accepted the mediator's proposal.  With the assistance of Mr. Melnick, a professional mediator, Plaintiffs and Defendants, by their counsel, have conducted extensive discussions and arm's-length negotiations concerning both the mediation process and the terms and conditions of this Settlement.

Subject to Court approval, the Parties agree to settle this Action for the payment of $2,979,000 to Class Members.

Plaintiffs believe that the claims asserted in the Litigation are strong and that through discovery, additional evidence would be discovered to further support the claims.  Nevertheless, Plaintiffs recognize and acknowledge the inherent problems of proof under, and possible defenses to, the securities law violations asserted in the Litigation, especially with respect to proof of Defendants' state of mind or scienter, loss causation, the maximum amount of potentially recoverable damages to the Class had Plaintiffs prevailed at trial, as well as the expense and length of continued proceedings necessary to prosecute the litigation against  Defendants through trial and through appeals.  Plaintiffs also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation.

5

In addition, Plaintiffs maximum estimated damages amount was approximately $23 million. The Proposed Settlement, which recovers approximately 13% of the Class' estimated damages is an excellent result given the risks inherent in this Litigation. Plaintiffs believe the Proposed Settlement is excellent and is in the best interests of Plaintiffs and the Class.

As set forth in the Stipulation, the Defendants have denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the claims alleged in the Complaint. Nonetheless, Defendants have concluded that further conduct of the litigation would be uncertain, protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation. Defendants also have taken into account risks inherent in any litigation, especially in complex cases like this Litigation.

## III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive court approval. Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement may be approved if the settlement is "fair, reasonable, and adequate." Fed.R.Civ.P. 23 (e)(2). "Approval is generally a two-step process in which a 'preliminary determination on the fairness, reasonableness, and adequacy of the proposed settlement terms' is reached."

6

*Melanie K. v. Horton*, No. 1:14-CV-710-WSD, 2015 WL 1799808, at *2 (N.D. Ga. Apr. 15, 2015).  Rule 23(e) requires that class members be provided "notice of the proposed dismissal or compromise" of a class action. To avoid serving notice of an obviously deficient settlement, "courts have resorted to a two-step approach" – holding a preliminary hearing prior to determine whether to disseminate notice and hold a final approval hearing. *In re Skinner Grp., Inc.*, 206 B.R. 252, 260-61 (Bankr. N.D. Ga. 1997); *Bennett v. Behring Corp.*, 737 F.2d 982, 985-86, 988 (11th Cir. 1984) (two-step process for approving class action settlement appropriate).

In determining whether to approve the Settlement, the Court should be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *See Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).  Public policy strongly favors the pretrial settlement of class action lawsuits. *In re U.S. Oil,* 967 F.2d at 493 (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Access Now Inc. v. Claire's Boutiques,* No. 00-14017-CIV, 2002 WL 1162422, at *4 (S.D. Fla. May 7. 2002) (there is an overriding public interest in favor of settlement, particularly in class actions). In deciding whether to preliminarily approve the Settlement terms themselves, the Court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the Settlement is in the best interests of those whose claims will be extinguished. *See In re Domestic Air*

7

*Transp. Antitrust Litig.,* 148 F.R.D. 297, 312 (N.D. Ga. 1993) (quoting 2 Herbert

B. Newberg, *Newberg on Class Actions,* § 11.40 (1985)).  Courts should exercise

restraint in examining a proposed settlement and recognize that they should not

"make a proponent of a proposed settlement justify each term of settlement

against a hypothetical or speculative measure of what concessions might have

been gained; inherent in compromise is a yielding of absolutes and an

abandoning of highest hopes." *Cotton,* 559 F.2d at 1330 *see also Access Now,*

2002 WL 1162422, at *4 (same); *Ass'n for Disabled Ams., Inc., v. Amoco Oil

Co.,* 211 F.R.D. 457, 467 (S.D. Fla. 2002) (same). "Federal Courts look with

great favor upon the voluntary resolution of litigation through settlement....

This rule has particular force regarding class action lawsuits." *Airline Stewards &

Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.,* 630 F.2d 1164, 1166-

67 (7th Cir. 1980) (citations omitted). *See also Rhein Med., Inc. v. Koehler,* 889

F. Supp. 1511, 1516 (M.D. Fla. 1995) (settlements are "highly favored and will

be enforced whenever possible").Further, a court should not engage in a trial on

the merits when considering the propriety of a settlement. *See Cotton,* 559 F.2d at

1330. Rather:

> The Court must rely upon the judgment of experienced counsel
> and, absent fraud, 'should be hesitant to substitute its own
> judgment for that of counsel' [...] Even when the Court becomes
> aware of one or more objecting parties, the Court is not 'required
> to open to question and debate every provision of the proposed
> compromise.' *Ass'n for Disabled Ams.,* 211 F.R.D. at 467 (quoting

8

*Cotton,* 559 F.2d at 1330-31); *Access Now, Inc.*, 2002 WL 1162422 at *4.

The preliminary approval motion requires Court to determine whether: (1) the settlement has no obvious deficiencies; (2) the settlement is within the range of reasonableness; and (3) notice to the class is warranted. *Fresco v. Auto Data Direct, Inc.*, No. 0361063CIV-MARTINEZ, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) ("[a] proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement") (internal citations omitted); *In re Checking Account Overdraft Litig.*, No. 10-163S, 2012 WL 4173458, at *5 (S.D. Fla. Sept. 19, 2012) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.").

The proposed Settlement has no obvious deficiencies and falls within the reasonable range of possible approval. First, the Settlement is the culmination of arm's-length negotiations, which included a formal mediation with an experienced and impartial mediator as well as well-informed and experienced counsel. Second, the Settlement Amount is well within the reasonable range of recoveries in securities class actions. Third, the substantial risk of continued litigation supports preliminary approval of the proposed Settlement. Therefore, the proposed Settlement satisfies Rule 23(e) and should be preliminarily approved.

9

**IV.   THE PROPOSED SETTLEMENT HAS NO OBVIOUS DEFICIENCIES AND IS THE RESULT OF GOOD FAITH, ARM'S-LENGTH NEGOTIATIONS BY WELL-INFORMED AND EXPERIENCED COUNSEL**

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations. *See* 2 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.41 at 11-88 (3d ed. 1992); *see also* Manual For Complex Litigation (Fourth) §21.632-21.633. Courts place considerable weight to the opinion of experienced and informed counsel. *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x. 843, 845 (11th Cir. 2011) ("Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its own judgment for that of counsel"). Negotiations between counsel who possess the "experience and ability... necessary to effective representation of the class's interests," ensure fair resolution. *Id. See also In re Motorsports Merch. Antitrust Litig.,* 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000); *In re Domestic Air Trans.,* 148 F.R.D. at 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

Plaintiffs' Counsel has ample experience prosecuting securities class actions. Further, Plaintiffs' Counsel is well informed about the strengths and weaknesses of the claims against the Defendants – the Settlement was reached only after a thorough investigation of the facts and merits of the legal claims and defenses,

10

briefing on Defendants' motion to dismiss, briefing on Defendants' motion for reconsideration, briefing on Plaintiffs' motion for class certification, substantial document discovery, consultation with a damages and accounting consultant, consultation with an expert on market efficiency, and submissions and briefing during mediation.  Thus, Plaintiffs' Counsel and the Plaintiffs had a sufficient understanding of the claims and defenses to negotiate this excellent result.  *See, In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (class counsel had sufficient information to make an informed judgment based on interviews of former employees, review of documents relating to SEC investigation and consultation with accounting and damages experts); *cf., In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("formal discovery [is not] a necessary ticket to the bargaining table.").

 And the Settlement has no obvious deficiencies.[3] Along with an all cash recovery, all members of the proposed Class, including Plaintiffs, will be treated fairly and in a similar manner – each recovering their pro rata share of the Net Settlement Fund.

Plaintiffs' Counsel has concluded that the settlement of this Litigation on the terms and conditions set forth in the Stipulation is an excellent result for the Class. This conclusion is based on analysis of the legal and factual issues

---

3 "[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg on Class Actions,* § 11.51 at 11.88 (3rd ed. 1992).

presented; extensive factual investigation; review of the evidence produced by Defendants; and analysis of the risk, expense, and delay of continued litigation, particularly in light of the serious disputes among the parties concerning the merits and damages. Consequently, the Court has ample evidence that the Settlement was negotiated in good faith by well-informed counsel, and was not the product of collusion.

## V.   THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL

"Particularly in class action suits, there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well-deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Part of that complexity stems from the calculation of damages and determining the range of possible recovery. This generally requires expert testimony and invariably leads to the proverbial battle of the experts at trial, that the Class could lose.

Class action settlements typically return substantially less than Plaintiffs' estimate of maximum class damages. According to a comprehensive review of every securities class action settlement between 2005 and 2014, even in cases with total maximum damages of less than $50 million, the median settlement returned 11.7% of maximum damages. Cornerstone, Securities Class Action Settlements

12

2014 Review and Analysis, at 9;[4] *see also In re Charter Commc'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at * 6 (E.D. Mo. June 30, 2005) (observing average settlements since 1995 were 5.5% to 6.2% of estimated losses).  Here, even assuming Plaintiffs succeeded on the merits, Plaintiffs' expert estimates that the Class's damages would be, at most $23.1 million.  The Proposed Settlement results in a recovery of approximately 13% of the Class' maximum damages amount, and is well within the range of reasonableness.

## VI.   THE BENEFITS FOR THE CLASS WEIGHED AGAINST LITIGATION RISKS, STRONGLY SUPPORT PRELIMINARY APPROVAL

The ability to avoid the risk, uncertainty, expenses, and duration of further litigation should be considered by the Court in reviewing this motion. It is well settled that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential- Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992). While Plaintiffs are prepared to go to trial against the Defendants, and remain confident in their ability to ultimately prove their claims, a trial is always a risky proposition. *See Gutter v. E.I. Dupont De Nemours & Co.*, 1:95-cv-02152-ASG, 2003 U.S. Dist. LEXIS 27238 , at *5 (S.D. Fla. May 30, 2003) ("the risks associated with proceeding to trial in [ ... ] complex securities litigation,

---

4 Available at https://www.cornerstone.com/GetAttachment/701f936e-ab1d-425b-8304-8a3e063abae8/Securities-Class-Action-Settlements-2014-Review-and-Analysis.pdf

particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement").

Here, even though the motion to dismiss and for reconsideration were defeated, Plaintiffs faced risks of having the court narrow the proposed class in ruling on the motion for class certification, and in litigating this action to a verdict, which would require that Plaintiffs prevail at summary judgment and trial.

Plaintiffs and their counsel recognize the significant risks and uncertainty involved in pursuing Plaintiffs' claims through summary judgment and trial. Of course, the Class must not only win at trial, but against the Defendants' post-trial motions, and on appeal. *See, e.g., Robbins v. Koger Props. Inc.*, 116 F.3d 1441, 1448-1449 (11th Cir. 1997), reh'g en banc denied, 129 F.3d 617 (finding no loss causation and overturning $81 million jury verdict); *Badger v. S. Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1347 (11th Cir. 2010) (reversing $31.7 million jury verdict). The settlement avoids these risks.

Under these circumstances, the proposed settlement balances the risks, expenses, and delay inherent in complex cases among the respective parties. Thus, the benefits created by the Settlement weigh in favor of granting the motion for preliminary approval. In light of the risks of continued litigation and the time and expense to be incurred in prosecuting this action through a trial, the immediate

14

cash Settlement represents a meaningful recovery that is in the best interest of the Class.

## VII.   THE PROPOSED NOTICE IS ADEQUATE

To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). "'The notice must be of such nature as reasonably to convey the required information [...] and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314).

Plaintiffs request that the Court approve the form and content of the proposed Notice and Summary Notice. (*See* Exhs. A-1 and A-2 to the Settlement Stipulation). Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed Notice will be mailed to all identifiable Class Members and provide them with detailed information concerning: (a) the rights of Class Members, including the manner in which to object; (b) the nature of the litigation; (c) the proposed Settlement; (d) the process for filing a proof of claim; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought by Plaintiffs' Counsel; and (g) the necessary information for any Class Member to examine the Court records should they desire

15

to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name. The Notice closely follows a template provided by the Federal Judicial Center. *Compare* Exh. C *with* Federal Judicial Center Model Securities class action certificate and settlement: full notice.[5]

The Notice also satisfies the PSLRA's separate disclosure requirements by (a) stating the amount of the Settlement on both an aggregate and average per share basis, (b) providing a brief statement explaining the reasons why the parties are proposing the Settlement, (c) stating the maximum amount of attorney's fees and expenses (both on an aggregate and average per share basis) that Plaintiffs' Counsel will seek, and (d) providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7). Both forms of Notice will also disclose the date, time and location of the Fairness Hearing and the deadlines for seeking exclusion and submitting Claim forms and any objections to the Settlement, the Plan of Allocation, or to Plaintiffs' Counsel's requested attorney's fees and expenses. These disclosures are thorough and should be approved.

---

[5] Go to www.fjc.gov, select "Class Action Notices Page" from the left-hand column, and select Securities class action certificate and settlement: full notice.

16

Rule 23(c)(2)(B) requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." In securities class actions, it is customary to provide notice by (a) publishing a summary notice in a major publication, (b) publishing this same summary notice in a press release, (c) mailing long-form notice to all individual shareholders who can be found, and (d) publishing notice on a website. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010); *See also In re Domestic Air Trans., Antitrust Litig.*, 141 F.R.D. 534, 550-51 (N.D. Ga. 1992) (providing that notice by mail to those class members who could be identified and by publication only to those who could not be identified satisfies due process requirements); *In re Checking Account Overdraft Litig.,* 275 F.R.D. 654, 662 (S.D. Fla. 2011).

The proposed notice plan in this case follows this customary rule in securities class action. Thus, it readily meets standards imposed by Rule 23 and the PSLRA.

## VIII.  PROPOSED SCHEDULE

17

As outlined in the proposed Preliminary Approval Order submitted herewith, within sixteen (16) calendar days after entry of the Preliminary Approval Order (the "Notice Date"), the Claims Administrator will notify Class Members of the Settlement by mailing a copy of the Notice and the Proof of Claim Form, substantially in the forms attached as Exhibits A-1 and A-3 to the Stipulation, respectively, to all Settlement Class Members who can be identified with reasonable effort by the Claims Administrator. The proposed Preliminary Approval Order further requires, not later than sixteen (16) calendar days after the Notice Date, that Plaintiffs' Counsel, through the Claims Administrator, cause the Summary Notice to be published once electronically on the *GlobeNewswire* and in print once in the *Investor's Business Daily*.

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement.[6] The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

---

[6] The dates in the Proposed Preliminary Approval Order, including the deadlines for notice, opt outs and exclusions, will be keyed to the date that is selected for the Settlement Hearing.

18

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice to Class | 16 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing Summary Notice | 16 calendar days after entry of the Preliminary Approval Order |
| Filing of briefs in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's fee and expense request | 28 calendar days before the Settlement Hearing |
| Receipt deadline for Exclusions | 21 calendar days before the Settlement Hearing |
| Receipt deadline for Objections | 14 calendar days before the Settlement Hearing |
| Filing of reply memoranda in response to any objections | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | _____, 2016 [100 days after entry of the Preliminary Approval Order], or at the Court's earliest convenience thereafter. |
| Deadline for submitting Proofs of Claim | 60 calendar days after entry of the Preliminary Approval Order |

## IX.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Parties have consented to certification of a Settlement Class in the Litigation defined as "all Persons who purchased MiMedx securities during the period from March 29, 2012 through September 4, 2013, inclusive." Nevertheless, the Court must independently determine whether this case meets the requirements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b), even if the certification is only for settlement purposes. *Borcea v.*

19

*Carnival Corp.,* 238 F.R.D. 664, 676 (S.D. Fla. 2006) citing, *Amchem Prods. v. Windsor,* 521 U.S. 591, 621, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Here, Plaintiffs' Motion for Class Certification has been fully briefed. Plaintiffs will not here repeat the arguments contained in their Motion for Class Certification and respectfully refer the Court to Plaintiffs' Motion for Class Certification (Dkt. No. 76). For the reasons stated therein all of the requirements of Rules 23(a) and 23(b) have been satisfied, and class certification for Settlement purposes is appropriate[7].

## X.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Proposed Settlement and enter the accompanying Proposed Preliminary Approval Order.

Dated: November 18, 2015                    Respectfully submitted,
**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence Rosen
Laurence M. Rosen, Esq.
Phillip Kim, Esq.
Sara Fuks, Esq.
275 Madison Avenue, 34th Floor

---

[7] Plaintiffs' Motion for Class Certification seeks certification of a shorter class period than the Settlement Class: March 15, 2013 to September 4, 2013. Nevertheless, the same arguments and analysis supporting class certification apply with equal force to the longer Settlement Class Period. The Settlement Class Period is based upon the Class Period alleged in the operative Complaint.

New York, NY  10016
Phone: (212) 686-1060
Fax: (212) 202-3827
sfuks@rosenlegal.com
lrosen@rosenlegal.com
pkim@rosenlegal.com
sfuks@rosenlegal.com

Lead Counsel for Plaintiffs

and

Lauren S. Antonino, Esq.
Ga. Bar No. 652408
The Antonino Firm LLC
Five Concourse Parkway
Suite 1425
Atlanta, Georgia  30328
Tel:  770-408-1229
Fax: 866-372-5586
lauren@antoninofirm.com

Liaison Counsel for Plaintiffs

21

**Local Rule 7.1D Certification**

Counsel for Plaintiffs hereby certifies that the foregoing Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement has been prepared with Times New Roman 14 point font, one of the fonts and point selections approved by the Court in Local Rule 5.1C.

This  18th Day of November, 2015                    s/ Sara Fuks, Esq.

22

## CERTIFICATE OF SERVICE

I, Sara E. Fuks, hereby certify that I electronically filed Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorney of record.

This 18th day of November, 2015                                 s/ Sara Fuks, Esq.

23